```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**HERBERT ESTES**                                          **CIVIL ACTION**

**VERSUS**                                                 **NO. 05-3305**

**WARDEN BURL CAIN**                                       **SECTION "I"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). Accordingly;

IT IS HEREBY RECOMMENDED that the instant petition be **DENIED WITH PREJUDICE.**

**I.   PROCEDURAL HISTORY**[1]

Petitioner, Herbert Estes, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana.  On July 23, 1996, Estes, along with co-defendant, Beatrice Chisolm, were charged by bill of information with two counts of armed robbery.  The original trial, which commenced on January 7, 1998, ended, pursuant to defense counsel's motion, in a mistrial.[2]  On March 18, 1998, Estes and Chisolm again stood trial, this time only on the armed robbery charge set forth in count two of the bill of information.  Both were found guilty of the lesser offense of first degree robbery.  Thereafter, both Estes and Chisolm, in separate adjudications, were found to be fourth-felony offenders and both were sentenced to life imprisonments at hard labor without benefit of probation, parole or suspension of sentence.

On September 27, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed the convictions and sentences as to Estes and Chisolm.  State v. Chisolm, 771 So.2d 205 (La. App. 4 Cir. 2000).  On September 28, 2001, the Louisiana Supreme Court denied petitioner's writ application.  State v. Chisolm, 798 So.2d 106 (La. 2001).

---

[1]Portions of the procedural history are taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Chisolm, 771 So.2d 205, 208 (La. App. 4 Cir. 2000).

[2]See State rec., supplemental vol. 1 of 3, docket master at p. 2.

Following the completion of his direct appeal proceedings, petitioner sought post-conviction relief. Petitioner's efforts in this regard culminated on June 3, 2005, when the Louisiana Supreme Court, after denying his writ application, see State ex rel. Estes v. State, 896 So.2d 998 (La. 2005), denied his motion for reconsideration. See State ex rel. Estes v. State, 903 So.2d 441 (La. 2005).

In the instant federal habeas corpus action, petitioner raises the following claims:  1) The evidence was insufficient to support his first degree robbery conviction; and, 2) He received ineffective assistance of counsel. In its Response (rec. doc. 17), the State does not contest the fact that the instant action is timely and that petitioner, as required under Rose v. Lundy, 455 U.S. 509 (1982), has exhausted his state court remedies. Before proceeding to the merits, the court shall review the applicable facts.[3]

Around 4:00 p.m. on May 8, 1996, Frank Bradley went to the Club Savoy, a bar near his home. From that time until about midnight, he consumed six or seven beers. As he went toward his vehicle to leave, a female subsequently identified as Beatrice Chisolm approached him and struck up a conversation. While she was

---

[3] The facts are taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Chisolm, 771 So.2d 205 (La. App. 4 Cir. 2000). The Court notes that, after a review of the trial transcript included in the state record, those facts are accurately recounted.

talking to him, Bradley noticed someone, whom he observed only as a silhouette, enter his vehicle and remove his gun from the car seat. After that, a male subsequently identified as Herbert Estes approached and said he knew who took the gun and would get it back for him.

The three of them left the bar in Bradley's vehicle. Bradley let Estes drive because he said he knew the area where the person who took the gun resided. After Estes made two stops with no luck, Bradley told Estes to drive him home, and he would report the gun as missing.

When they got to the house, Bradley invited them in. They had a few more drinks and listened to some music. During this time, Bradley and Estes stayed in the living room. Chisolm went to the bathroom several times. After about an hour, Chisolm and Estes left. Bradley did not know how they got home.

Bradley awoke about 9:00 a.m. on May 9, 1996, and was unable to find the keys to his house and car. He walked to a nearby gas station for cigarettes. When he got back, he saw Estes and Chisolm in his driveway. He noticed an unfamiliar vehicle parked directly across from his house. Bradley told Estes and Chisolm that his keys were missing. Estes replied that he knew where they were. He stated that they were in the bathroom. Bradley said that he never kept his keys in the bathroom, but Estes, after entering the bathroom, came out with the keys.

Estes then mentioned that he was still working on getting Bradley's gun back, but it would cost him. Bradley offered ten dollars. Estes said he would need more money. Bradley then walked into the kitchen. Estes walked behind him and put a knife to Bradley's side. Estes then told Bradley to give him everything he had. Estes took Bradley's watch, cigarettes and seventeen dollars. Chisolm, who was also in the kitchen, told Estes to make Bradley lie down in the bedroom, which he did.

When Estes took Bradley to the bedroom, he told Bradley that he knew there was more in the house, and he intended to find it. Bradley remained in the bedroom until everything was quiet outside. After he got up, he noticed that he was also missing his television set, two vcrs, earrings purchased for his grandchildren, and between eighty and one hundred dollars in change.

Bradley called the police to report the incident. Because the perpetrators were no longer on the scene and no one was in danger, the police responded with a cold call, meaning that it was not a priority. Officer Lizelle Brooks responded at about 3:00 p.m. that afternoon. She did not obtain descriptions of the perpetrators, except that they were one male and one female, both black, and about twenty-nine or thirty years old. She also noted that Bradley stated with certainty that he could identify the perpetrators if he saw them.

Officer Louis Martinez followed up on the case. On May 21,

1996, he presented Bradley with two photographic lineups, one which included Chisolm and the other Estes.  Bradley immediately and positively picked out the suspects.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

>   legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 1056 (2000); Hill, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill, 210 F.3d at 485 (quoting 28 U.S.C.§2254(d)(2)).

### III. ANALYSIS

#### A.   Insufficiency of Evidence

When conducting a sufficiency of the evidence review, courts generally adhere to the standard set forth by Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the Court held that a claim of insufficient evidence would lie if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt.

Petitioner, though originally charged with armed robbery, was found guilty of the lesser offense of first degree robbery which is defined, under LSA-R.S.14:64.1, as follows:

>   A.  First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous

weapon.

Petitioner argues that the evidence was insufficient to establish the essential element that the victim, Frank Bradley, reasonably believed that his assailant, petitioner, was armed with a dangerous weapon because Bradley testified that petitioner, in fact, placed a knife at his side.  Thus, according to petitioner, the requisite reasonable belief was missing because the victim had actual knowledge that his assailant was armed with a dangerous weapon, specifically, a knife.

It is axiomatic that if the victim had actual knowledge that his assailant, i.e., petitioner, was armed with a dangerous weapon, then, as required for the purposes of establishing the essential elements of first degree robbery, the victim reasonably believed his assailant was armed with a dangerous weapon.  State v. Meyers, 620 so.2d 1160 (La. 1993); State v. Roberson, 924 So.2d 1201 (La. App. 3d Cir 2006).  Accordingly, petitioner's insufficiency of evidence argument is clearly without merit.

**B.   Ineffective Assistance of Counsel**

Petitioner argues that counsel was ineffective based upon the following alleged deficiencies:  1) Counsel's failure, contrary to petitioner's request, to object to the responsive verdicts being read to the jury; 2) Counsel's failure to argue that one of petitioner's prior guilty pleas was attained unconstitutionally; 3)

Counsel's failure to object to the pertinent bill of information; and, 4) Counsel's failure to advise petitioner of a plea agreement offered by the State prior to trial. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993)(quoting

9

Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir.1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner argues that counsel was unconstitutionally ineffective by virtue of his failure to object to the trial court advising jurors regarding the responsive verdicts associated with armed robbery, the crime with which petitioner was charged. However, petitioner fails to set forth what basis counsel would have had to lodge such an objection.  As the State points out in its Response (rec. doc. 17, p. 10), La.C.Cr.P. art. 809 provides that after the trial court has charged the jury, "the judge shall give the jury a written list of the verdicts responsive to each

10

offense charged, with each separately stated. The list shall be taken into the jury room for use by the jury during its deliberation." Under La.C.Cr.P. art. 814, first degree robbery, along with simple robbery, is listed as a responsive verdict to the charge of armed robbery.

Counsel is not obliged, at the request of his client, to lodge an objection absent a basis for such an objection. Absent a valid basis for objecting to the trial court advising jurors regarding the responsive verdicts associated with petitioner's armed robbery charge, petitioner has clearly failed to show any deficiency on the part of counsel as required under Strickland, supra. See Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner next asserts that counsel was ineffective by virtue of his failure to challenge his fourth felony offender adjudication based upon the fact that one of petitioner's prior guilty pleas was unconstitutional because petitioner was not advised of his right against self-incrimination if he chose to go to trial. A review of the Louisiana Fourth Circuit's opinion, Chisolm, 771 So.2d at 213,

reflects that petitioner, on direct appeal, challenged his fourth felony offender adjudication based, in part, upon his claim that "the guilty plea forms on the predicate convictions did not inform him of the correct sentence exposure on those offenses." In rejecting petitioner's challenge, the state appellate court specifically found that the guilty pleas upon which petitioner's predicate offenses were based were, in fact, constitutional, stating: "The plea forms submitted by the State relative to Estes's predicate offenses all contained the three Boykin rights", i.e., "the right to trial by jury, the right against self-incrimination and the right to confront his accusers." Id.

As noted earlier, this court, on habeas review, may presume the above factual finding on the part of the state appellate court to be correct.[4]  As such, no basis existed for lodging a Boykin objection to petitioner's predicate offense guilty plea and counsel's action in failing to lodge such an objection cannot be considered deficient.  Accordingly, counsel's performance clearly was not unconstitutionally ineffective.

Petitioner also asserts that counsel was ineffective in failing to challenge the deficient bill of information lodged against him.  Petitioner claims the bill of information was deficient in that it specified that a gun was taken from the victim

---

[4]See discussion supra at pp. 6-7.

during the alleged robbery when, at trial, it was established that the gun was taken the night before the actual robbery.  Further, petitioner charges that the bill of information unconstitutionally failed to set forth all of the items which, at trial, the victim claimed were stolen from him.  Petitioner contends that he was prejudiced by this deficiency in the bill of information because he was not provided with adequate notice of the accusations which he was compelled to defend against at trial.

In Brown v. Cain, 2001 WL 96410, *2 (E.D. La. 2001), Judge Charles Schwartz observed that the scope of review afforded a claim seeking federal habeas corpus relief based upon the alleged insufficiency of a state court indictment or bill of information is quite limited.  As the court explained:

> The sufficiency of a state court indictment is cognizable on federal habeas corpus only if the indictment was so flawed that the state court was deprived of jurisdiction. In other words, if the state courts had jurisdiction under the indictment to hear the case against petitioner, this [c]ourt does not have jurisdiction to consider the sufficiency of that indictment under the law applicable to habeas corpus proceedings.
>     Additionally, the question of whether the state courts had jurisdiction is one for those courts. "[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged."

Brown, 2001 WL at *2, quoting Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969) (emphasis original) (footnote omitted).[5]

---

[5] Judge Schwartz further noted that the above-described limited federal habeas review is applicable even when the state's highest

Following the above discussion, the Brown court acknowledged that a federal court, on habeas review, could scrutinize a state court indictment or bill of information for purposes of determining whether, in accordance with the Due Process Clause of the Fourteenth Amendment, the petitioner received "fair notice of the charges against him to permit adequate preparation of his defense." Id. at *3 (footnote omitted). A federal court, however, is not limited to an examination of the pertinent indictment or bill of information for purposes of determining whether or not the requisite notice has been provided. "[T]he accused's constitutional right to notice of the charge brought against him can be satisfied by the availability of other means of obtaining notice ... such as a bill of particulars, a preliminary examination and criminal pre-trial discovery." Dowell v. Lensing, 805 F.Supp. 1335, 1343 (M.D. La. 1992) (citing Liner v. Phelps, 731 F.2d 1201 (5th Cir. 1984)) (footnote omitted).

In the instant case, the pertinent bill of information, a copy of which is contained in the State rec., vol. 1 of 2, provided, in

---

court has not specifically addressed a petitioner's sufficiency of the indictment or bill of information claim. In support, Judge Schwartz cited Alexander v. McCotter, 775 F.2d 595 (5th Cir. 1985), wherein the Fifth Circuit determined that the Texas Court of Criminal Appeals, the "highest criminal court in Texas," "necessarily held that the indictment was sufficient for state jurisdictional purposes" where "the sufficiency of indictment claims were presented" and the state court "refused discretionary review and denied a petition for a state writ of habeas corpus ... without expressly commenting or ruling on the alleged deficiencies...." Brown, 2001 WL at *2 n.12.

pertinent part:

> And now the said Charles Heuer, Assistant District Attorney for the Parish of Orleans aforesaid, does further give the said Court here to understand and be informed that one Herbert Estes and one, Beatrice Chisholm each, late of the Parish of Orleans, on the 9th day of May in the year of our Lord, one thousand nine hundred and ninety-six in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans, while armed with a dangerous weapon, to wit, a knife, robbed Frank Bradley of a television, vcr, and a gun contrary to the form of the Statute of the State of Louisiana in such case made and provided and against the peace and dignity of the same.[6]

The fact that Bradley testified at trial that jewelry and cash, in addition to the items listed in the above-quoted bill of information, were also taken, did not deprive petitioner of knowledge of the charge lodged against him for purposes of satisfying his right to due process.  Further, prior to petitioner's March 18, 1998 trial, various hearings were conducted, pursuant to which petitioner, along with his co-defendant, Beatrice Chisolm, heard sworn testimony regarding the evidence that would be presented against them at trial.  On August 27, 1996, a probable cause hearing was conducted, pursuant to which the investigating police officer, Louis Martinez, apprised the court and defendants

---

[6]A handwritten notation on the bill of information reflects that on "1-7-98", the bill of information was amended to exclude "a gun" from the list of items taken and to add "cash", and a "watch".

of the evidence supporting the armed robbery charge.[7]  On January 7, 1998, a motion to suppress hearing was held, pursuant to which the victim, Frank Bradley, offered testimony regarding the robbery at issue.[8]  Additional specifics were obtained from the State via defense counsel's motion for bill of particulars, discovery and inspection.[9]  Accordingly, the court finds that petitioner had, as required under the Fourteenth Amendment, sufficient notice of the charge lodged against him to facilitate adequate preparation of a defense.

Finally, petitioner claims that counsel was ineffective due to his alleged failure to apprise petitioner of a plea agreement offered by the State.  Petitioner states that he was informed by his sister that the State, prior to trial, "offered him a deal of ten (10) years", but counsel did not relay this offer to petitioner due to petitioner's "strong assertions" that he was "actually innocent" and due to the "flemsy [sic] evidence" against petitioner.

---

[7] A copy of the court's minutes reflecting the August 27, 1996 probable cause hearing is contained in the State rec., vol. 1 of 2.

[8] A copy of the court's minutes reflecting the January 7, 1998 motion to suppress hearing is contained in the State rec., vol. 1 of 2.

[9] A copy of the court's minutes reflecting that the State, on August 30, 1996, answered defense counsel's motion for bill of particulars, discovery and inspection, is contained in the State rec., vol. 1 of 2.

An attorney's failure to inform his client of a plea offer may amount to ineffective assistance of counsel. See Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995); see also Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir.), cert. denied, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986). However, the burden of proving such a claim falls on the habeas petitioner who must provide more than a "self-serving" statement, following trial, conviction and sentence, that counsel failed to advise him of a proffered plea agreement. See Winchell v. Crosby, 2005 WL 1421173, *6 (M.D. Fla. 2005); Williams v. Crosby, 2007 WL 1724944, *13-14 (M.D. Fla. 2007). Failure to require objective corroboration of a petitioner's unsupported allegation "would lead to an unchecked flow of easily fabricated claims.'" Winchell, 2005 WL at *6 (quotations omitted). See also Williams, 2007 WL at *13 (citation omitted) ("After trial, a defendant has nothing to lose by alleging that he was not properly advised of a plea that was offered."); Turcios v. Dretke, 2005 WL 3263918, *8, (S.D. Tex. 2005) (citation omitted) (in the context of petitioner's claim that counsel denied him the right to testify at trial, court observed: "Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable.")

In the instant matter, petitioner offers nothing more than his self-serving statement to the effect that his sister informed him that counsel informed her that the State, prior to trial, had

offered a plea agreement which counsel did not relay to petitioner. Such a statement, standing alone, is clearly insufficient to satisfy petitioner's heavy burden of proof under Strickland, supra. Accordingly;

## RECOMMENDATION

It is hereby RECOMMENDED that the petition of Herbert Estes for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 29th day of February, 2008.

ALMA L. CHASEZ
United States Magistrate Judge